# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER, | Case No. 14-cv-2610-BAS(KSC) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | **[ECF No. 22]** |
| JEFF A. KACHA, *et al.*, | |
| Defendants. | |

Plaintiff Chris Langer commenced this Americans with Disabilities Act ("ADA") action against Defendants Jeff A. Kacha and Tania A. Warchol (formerly Kacha) in their individual and representative capacities as trustees of the Kacha Family Trust. This action arises from allegations of ADA violations related to parking availability at the Hob Nob Restaurant. Defendants now move to dismiss for lack of subject matter jurisdiction. Plaintiff opposes.

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Defendants' motion to dismiss.

## I. BACKGROUND

The following facts are uncontroverted. Jeff Kacha and Tania Warchol (formerly Kacha) have owned the Hob Nob Restaurant and the adjacent apartment building at 121 Juniper Street since the 1990s. (Warchol Decl. ¶ 2, ECF 22-4.) The Hob Nob Restaurant and the apartment building are on separate legal properties and are separated by a wall that divides the two properties. (*Id.* ¶ 7.) In 2015, Tania Warchol was awarded both properties in a divorce settlement. (*Id.* ¶ 2.)

The Hob Nob Restaurant "does not have its own parking lot for its patrons." Instead, "[p]atrons must make use of available on-street parking on the adjacent or nearby streets only." (Warchol Decl. ¶¶ 6-7; Kacha Dep. 5:1-11, ECF No. 3.) This has been the case since the Kachas first owned the Hob Nob in the 1990's and is the case today. (*Id.*)

The apartment complex, however, as required by the building code, has two parking spots for each of three apartment units. (Kacha Dep. 5:1-11.) It also has two parking spots for the owners of the Hob Nob (not for patron use) and one parking spot to store trash containers. (Warchol Decl. ¶ 8.)

"There have been several times over the past years when SDG&E, the County Water Department, owners of neighboring apartment buildings, and others were engaged in trenching the street and/or construction. During these period of trenching and construction, the construction workers would put up 'no parking' signs in the construction zone and utilize all remaining street parking leaving no street parking for Hob Nob Restaurant customers." (Warchol Decl. ¶ 9; *see also* Kacha Dep. 10:1-9.) During that time, the Kachas made arrangements for Hob Nob customers "to make temporary use of the tenant parking lot at the adjacent apartment building . . . but only if the apartment residents were not using their assigned spots." (Warchol Decl. ¶ 7.) This temporary parking was only available between 7 a.m. and 2 p.m. when the road construction was going on. (*Id.* ¶ 10.) The Kachas discontinued using this temporary parking arrangement in the summer of 2014 before this lawsuit was filed.

(*Id.* ¶ 11.)

Chris Langer is a paraplegic who cannot walk and who uses a wheelchair for mobility. (Compl. ¶ 1.) In May 2014, Mr. Langer went to the Hob Nob Restaurant to eat. (*Id.* ¶ 7.) Mr. Langer attempted to park in what he believed was the Hob Nob parking lot, but there was no "fully compliant handicap-accessible parking space available." (*Id.* ¶ 11.)

In his Complaint, Mr. Langer alleges that "a fully compliant handicap-accessible parking spot once existed" in the parking lot where he attempted to park, but that "this ha[d] been allowed to fade away to the point that it is no longer available for use by disabled persons." (Compl. ¶ 11.) However, at his deposition, Mr. Langer responded that he had "not seen anything like that." (Langer Dep. 3:9-20, ECF No. 22-6.) He does not know whether or not that allegation of faded paint is true or not. (*Id.* at 4:7-9.)

Mr. Langer further alleges "on information and belief that there are other violations and barriers on the site that relate to his disability" and that "Plaintiff will amend the complaint to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection." (Compl. ¶ 16.) However, at his deposition, Mr. Langer stated that he has not experienced any additional barriers, and he doesn't know whether any exist or not. (Langer Dep. 6:3, 6:6, 6:10.)

Although Mr. Langer's brief suggests otherwise, discovery has long since closed in this case. (ECF No. 18.) The time has passed for any amended pleadings to be filed, and the case is set to begin trial in two months. (*Id.*) Plaintiff has not amended his pleadings to add any other violations or barriers at the Hob Nob Restaurant.

//
//
//
//

## II. LEGAL STANDARD

Under Rule 12 of the Federal Rules of Civil Procedure, a party may move to dismiss a claim based on the court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "Article III of the Constitution confines the federal courts to adjudication of actual 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560 (citation omitted). Consequently, a case that lacks Article III standing must be dismissed for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Because standing is essential for a federal court to have subject matter jurisdiction, the issue of standing is properly raised in a 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citations omitted).

The "irreducible constitutional minimum" of Article III standing is comprised of three elements: (1) "the plaintiff must have suffered an 'injury in fact' "which is both 'concrete and particularized' and 'actual or imminent,' not 'conjectural' or 'hypothetical' "; (2) "there must be a causal connection between the injury and the conduct complained of" such that the injury is "'trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court'"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (citations omitted). The party soliciting federal jurisdiction has the burden of establishing these elements. *Id.* The doctrines of ripeness and mootness also relate to a federal court's subject matter jurisdiction, and so challenges to a claim on either ground are properly raised in a 12(b)(1) motion. *Chandler*, 598 F.3d at 1122 (citations omitted).

A jurisdictional attack under Rule 12(b)(1) can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations in the complaint are insufficient to invoke federal jurisdiction, and the court is limited in its review to the allegations in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction. *Id.* Therefore, under a factual attack, the allegations in the complaint are not presumed to be true and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

## III. DISCUSSION

Plaintiff's lone federal claim is an alleged violation of Title III of the Americans with Disabilities Act ("ADA"). The ADA prohibits discrimination that interferes with disabled individuals' "full and equal enjoyment" of places of public accommodation. 42 U.S.C. § 12182(a). Unlawful discrimination under the ADA occurs when an accommodation "subjects an individual . . . to a denial of the opportunity . . . to participate in or benefit from the . . . accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

Pursuant to the ADA Accessibility Guidelines ("ADAAG"), parking spaces designated as reserved for disabled individuals must be identified by a specific sign. ADAAG § 4.1.2(7)(a). "At least one accessible route within the boundary of the site shall be provided from . . . accessible parking . . . to the accessible building entrance they serve." ADAAG § 4.3.2(1). Accessible parking spaces must be at least 96 inches wide and adjacent access aisles must be at least 60 inches wide. ADAAG §§ 4.6.3, 4.6.6.

The only available remedy to private plaintiffs under the ADA is injunctive relief. 42 U.S.C. § 12188(a)(1). Because this is the sole remedy, a plaintiff pursuing injunctive relief must demonstrate, in addition to the traditional elements of standing, a "real and immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In the context of an ADA claim, a plaintiff can satisfy this requirement by "demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 944 (9th Cir. 2011.) The Ninth Circuit has also held that if a plaintiff has established standing as to barriers that he did personally encounter, he may sue for injunctive relief as to barriers related to his disability that he did not personally encounter. *Id.* at 951; *see also Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008) (citation omitted) ("An ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability.").

Relying on *Roberts v. Corrothers*, 812 F.2d 1173 (9th Cir. 1987), Plaintiff argues that this Motion should not have been brought under Rule 12(b)(1) but is more appropriate for a Summary Judgment Motion.[1] In *Roberts*, interestingly, the appellate

---

[1] Plaintiff makes the rather peculiar argument that if this Motion had been brought as a Summary Judgment Motion under Rule 56, then he "would have filed a request under Rule 56(d) to deny or continue the hearing given that the defense filed this motion four days after the scheduling conference and before discovery has even begun. Plaintiff has a right to conduct a site

court affirmed the district court's dismissal for lack of subject matter jurisdiction. As the court in *Roberts* points out, when the issue of jurisdiction and the merits of the case are intertwined, "the district court assumes the truth of allegations in a complaint or habeas petition, *unless controverted by undisputed facts in the record*." 812 F.2d at 1177 (emphasis added). "Dismissal is then appropriate where it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

In this case, after discovery has been completed, the uncontroverted facts are that:

(1) Mr. Langer is disabled (Compl. ¶ 1);

(2) Mr. Langer went to the Hob Nob Restaurant in May of 2014 and saw a temporary sign that directed him to a neighboring apartment complex for parking (*id.* ¶ 7);

(3) The neighboring apartment complex had no properly labeled accessible parking spot (*id.* ¶ 11);

(4) This is the only barrier Mr. Langer encountered or knows of at the Hob Nob Restaurant (Lager Dep. 6:3, 6:6, 6:10);

(5) The Hob Nob Restaurant does not have and has not had, since the early 1990s, any parking lot for its patrons (Warchol Decl. ¶¶ 6-7; Kacha Dep. 5:1-11);

(6) At various times, because of construction, the owners of the Hob Nob Restaurant have arranged for patrons to have temporary parking available at a neighboring apartment complex between 7 a.m. and 2 p.m. while the construction was going on (Warchol Decl. ¶ 9);

---

inspection to assess the defendant's claims." (Pl.'s Opp'n 3 n.1.) The Court can only assume this is language that was borrowed from some other case, as the record reflects that the scheduling conference was held on January 12, 2015, over nine months before this Motion was filed. (ECF No. 18.) Furthermore, discovery has not only begun, it concluded eight months ago on June 2, 2015. (Scheduling Order ¶ 4, ECF No. 18.) Plaintiff has had ample time to do a site inspection, the facts have been completely developed, and the case is set to go to trial in April.

   (7) They did this by posting a temporary sign at an adjacent apartment complex that said that customers of the Hob Nob could park in this lot if no tenants were parked there (*id.* ¶ 10); and

   (8) The temporary sign is gone and has been gone since the summer of 2014. The arrangement for temporary parking is over. The owners have no intention of arranging temporary parking for their patrons at the adjacent apartment complex (*id.* ¶ 11).

Since these facts are undisputed and have not been controverted by any facts on the record, or any representations in Plaintiff's Response, it appears beyond a doubt that Plaintiff can prove no set of facts that would entitle him to subject matter jurisdiction in this case.

  Plaintiff further argues that the mere fact that Defendants no longer offer temporary parking does not render his claim moot. (Pl.'s Opp'n 3:19-7:18.) He urges this Court to apply the voluntary-cessation-doctrine standard, which substantially raises the bar that must be met to dismiss a claim as moot. (*Id.*) Under this doctrine, in order to dismiss a claim as moot based on a defendant's voluntary cessation of the complained behavior, the moving party must prove that the alleged wrongful behavior could not reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

  Plaintiff argues that the only evidence of voluntary cessation is Defendants' statements that they will not use the adjacent apartment building for either temporary or permanent parking by Hob Nob Restaurant patrons in the future. (Pl.'s Opp'n 3:19-7:18.) However, unlike the other voluntary-cessation cases cited by Plaintiff, this is a case where it is undisputed that the Hob Nob Restaurant does not and has not offered parking to its patrons since the early 1990s. (Warchol Decl. ¶¶ 6-7; Kacha Dep. 5:1-11.) It is undisputed that the temporary parking lot in the adjacent apartment building occurred only while construction was going on, and only between 7 a.m. and 2 p.m. while the construction was actively happening. (Warchol Decl. ¶¶ 7, 10.)

1  The record is uncontroverted that the temporary parking lot, which was only used
2  *temporarily*, is no longer in use. (Warchol Decl. ¶ 11.) Therefore, the cases cited by
3  Plaintiff for the proposition that a defendant cannot cease offering parking, just to
4  avoid being sued for failure to provide disabled parking, are inapposite. The Hob Nob
5  Restaurant has never provided parking to patrons except during a brief period of
6  construction.
7       Based on the uncontroverted facts specific to this case, the Court finds that the
8  allegedly wrongful behavior cannot reasonably be expected to recur. *See Grove v.
9  De la Cruz*, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005) ("[A] case may become
10 moot if subsequent events have made it absolutely clear that the allegedly wrongful
11 behavior cannot reasonably be expected to recur, [or] interim relief or events have
12 completely and irrevocably eradicated the effects of the alleged violation.").
13      Accordingly, the Court **GRANTS** Defendants' motion as to Plaintiff's first
14 claim for ADA violations.
15      Defendants also assert in their motion that if the Court dismisses Plaintiff's
16 federal claim as moot, then it must also dismiss the pendent California state-law
17 claims. (*See* Defs.' Mot. 9:1-12, ECF No. 22-1.) "[D]istrict courts may decline to
18 exercise supplemental jurisdiction over a[] claim if . . . the district court has dismissed
19 all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). However,
20 district courts only have discretion "[i]f the district court dismissed all federal claims
21 on the merits." *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806
22 (9th Cir. 2001). If, however, the district court "dismisses [all federal claims] for lack
23 of subject matter jurisdiction, it has no discretion and must dismiss all [state law]
24 claims." *Id.*
25      Because the Court has dismissed Plaintiff's ADA claim for lack of subject
26 matter jurisdiction, it does not have discretion to exercise supplemental jurisdiction
27 over the state-law claims. *See Herman Family Revocable Trust*, 254 F.3d at 806.
28 //

## IV. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss. (ECF No. 22.)

**IT IS SO ORDERED.**

DATED: February 10, 2016

Hon. Cynthia Bashant
United States District Judge